**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Hector MARTINEZ, Jorge Gomez, Humberto Gallo, Defendants– Appellants.**

No. 93–4076.

United States Court of Appeals, Eleventh Circuit.

May 20, 1996.

William A. Meadows, Jr., Miami, FL, Thomas W. Risavy, South Miami, FL, Steven E. Kreisberg, Coconut Grove, FL, Richard C. Klugh, Asst. Federal Public Defender,

James R. Garley, Federal Public Defender, Ft. Lauderdale, FL, for appellant(s).

Kendall Coffey, U.S. Atty., Jeanne M. Mullenhoff, Asst. U.S. Atty., Miami, FL, for appellee.

Before EDMONDSON and BIRCH, Circuit Judges, and FOREMAN *, Senior District Judge.

EDMONDSON, Circuit Judge:

Humberto Gallo, Hector Martinez and Jorge Gomez appeal their convictions for conspiracy to possess, and possession of cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841. Gallo and Gomez appeal also their convictions for using a firearm in the commission of a drug offense under 18 U.S.C. § 924(c). Gallo also appeals his sentence. We affirm in part and reverse in part.

In 1992, Luis Fernandez, an undercover narcotics detective with the Metro–Dade Police Department, received a phone call from Defendant Gallo. Gallo told Fernandez that he was interested in executing a "rip-off," that is, in stealing narcotics.

Days later, Fernandez and Luis Escobedo, a confidential informant ("CI"), met with Gallo. Escobedo played the role of a drug dealer, responsible for the security of 50 kilograms of cocaine, who was willing to leave the cocaine unguarded for Gallo to steal. Gallo was to receive 25 kilograms as payment for his role in stealing the cocaine. Gallo assured Fernandez that he was a professional who had executed rip-offs before and that he had men with guns ready to steal this 50 kilograms of cocaine. Fernandez and Gallo agreed that Gallo would steal the cocaine the next day.

The next day, Fernandez moved two suitcases, filled with five kilograms of real cocaine and 45 kilograms of sham cocaine, into the kitchen of an abandoned house. Then, away from the house, Fernandez and Gallo met again in a shopping center parking lot. At the meeting, Defendants Martinez and Gomez were present but in a separate vehicle. Defendants then followed Fernandez to a service station where Gallo told Martinez and Gomez to pretend they were using the phone while he talked to Fernandez. Gallo cautioned Fernandez to re-wrap his share of the cocaine, just in case Fernandez attempted to sell the cocaine to the dealers from whom they were stealing it.

Escobedo arrived and took Gallo to the house where the cocaine was stored. When Gallo was returned to the service station, Gomez got into Gallo's car. Escobedo left the scene. Defendants then went to the house: Gomez and Gallo drove in Gallo's car, and Martinez drove himself in his truck.

Defendants arrived at the house which was being watched by law enforcement agents. Gallo and Gomez held handguns as they approached the house. Defendants broke into the house using a crowbar, took the suitcases and began to leave. Then Defendants were told they were under arrest. Martinez and Gomez surrendered immediately. Gallo was captured after he ran across the yard and up a tree. Two weapons were retrieved at the scene: one was found on the floor of the house, the other outside in the yard.

All three Defendants were charged with conspiring to possess cocaine with the intent to distribute and with possession of cocaine with intent to distribute. Gomez and Gallo were also charged with using a firearm in the commission of a drug offense and with felon in possession of a firearm. Only Martinez testified at trial. Each Defendant was convicted of all the offenses with which he was charged.

*Sufficiency of the Evidence*

Claiming insufficient evidence, Gallo challenges his conspiracy conviction; Martinez challenges his conspiracy and substantive cocaine possession convictions; and Gomez challenges his conspiracy, cocaine possession, and use of a firearm during a drug offense convictions. Sufficiency of the

* Honorable James L. Foreman, Senior U.S. District Judge for the Southern District of Illinois, sitting by designation.

evidence is a question of law reviewed *de novo*. *See United States v. Harris,* 20 F.3d 445, 452 (11th Cir.1994). We, however, view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. *See United States v. Keller,* 916 F.2d 628, 632 (11th Cir.1990).

Martinez and Gomez claim that they did not know they were going to steal cocaine; they say Gallo told them they were going to steal money. Therefore, Martinez and Gomez contend that they cannot be convicted of either the conspiracy or of possession charges because they did not know the suitcases contained cocaine. Gallo claims he cannot be convicted of *conspiracy* to possess cocaine because there was no agreement with others to steal cocaine, but only an agreement to steal money. *See United States v. Badolato,* 701 F.2d 915, 919–20 (11th Cir. 1983) (conviction for drug conspiracy requires agreement to violate narcotics laws).

Defendants submit the government presented no evidence that Martinez and Gomez knew they were going to the house to steal cocaine. Defendants say that all communications about cocaine were between Gallo, Fernandez and Escobedo and that Gallo never revealed the true object of the burglary to Martinez and Gomez. At trial, Martinez testified that he believed he was accompanying Gallo to steal money, that he did not know Gomez, that the suitcases he took were closed and their contents could not be seen, and that the suitcases were never opened inside the house.

Defendants claim that to convict them the jury had to assume that Gallo told Gomez and Martinez about the cocaine, and that this assumption is insufficient. Defendants stress that "intuition cannot substitute for admissible evidence when a defendant is on trial." *See United States v. Hamblin,* 911 F.2d 551, 558 (11th Cir.1990). *See also United States v. Pedro,* 999 F.2d 497, 502 (11th Cir.1993) (evidence insufficient to support conviction for felon in possession because no

evidence showed that defendant knew suitcase carried by codefendant contained firearm).

The government says we need only conclude that a reasonable fact finder could find that the evidence established Defendants' guilt beyond a reasonable doubt, *see Keller,* 916 F.2d at 632, and that reversal is warranted only where no reasonable trier of fact could have found Defendants guilty beyond a reasonable doubt. *See United States v. Sharif,* 893 F.2d 1212, 1213 (11th Cir.1990). The government argues that, because Gallo told Fernandez he had men ready to steal the cocaine, the jury was reasonable in assuming the men he had ready were Martinez and Gomez and that Martinez and Gomez knew they were going to steal cocaine.

We have considered the arguments of both the government and Defendants and have reviewed the entire record. We have found no evidence proving that Gomez knew he was going to the house to steal cocaine. From this record, the government cannot show that Gallo—or anyone else—ever told Gomez that the true object of the burglary was cocaine. The government's argument that the jury could infer from Gallo's statement that he had "men and guns ready" is insufficient, alone, to prove that Gomez knew he was going to steal cocaine. *Cf. Pedro,* 999 F.2d at 502. So, we reverse Gomez's convictions for conspiracy to possess cocaine, possession of cocaine and use of a firearm in the commission of a drug offense.[1]

Sufficient evidence does, however, support Gallo's and Martinez's convictions. Martinez testified that he thought they were going to the house to steal $50,000 in cash and that he believed he would be paid $10,000 for his role in the theft. But the jury was entitled to reject Martinez's testimony and to consider it as substantive evidence of his guilt. *See United States v. Brown,* 53 F.3d 312, 314–15 (11th Cir.1995). In *Brown,* we held that, at least where corroborative evidence of guilt exists, a defendant's disbelieved testimony can establish an element of

---

1. Gomez's conviction for felon in possession stands. Because Gomez's convictions for the drug-related counts are reversed, we remand Gomez's case for resentencing on the felon-in-possession count. *See United States v. Alvarez–Moreno,* 874 F.2d 1402, 1414 (11th Cir.1989); *United States v. Rosen,* 764 F.2d 763, 767 (11th Cir. 1985).

the crime and that this rule applies with special force where the element to be proved is the defendant's knowledge or intent. *Id.* at 314–15. *See also Wright v. West,* 505 U.S. 277, 295–96, 112 S.Ct. 2482, 2492, 120 L.Ed.2d 225 (1992) (plurality opinion). The jury, observing Martinez's demeanor, was entitled to disbelieve Martinez's testimony and to conclude that the opposite of his testimony was true.[2] *See Brown,* 53 F.3d at 314. So, the jury had an evidentiary basis to believe that Martinez knew he was involved in stealing drugs. Martinez's acts at the pertinent house and his disbelieved testimony at trial when combined with Gallo's statements that Gallo had guns and men ready to "rip-off" the cocaine are more than sufficient to support Martinez's convictions for conspiracy to possess and possession of cocaine with intent to distribute it.

Gallo argues that he cannot be convicted of conspiracy to possess cocaine if his "coconspirators" did not know they were going to the house to steal cocaine. Because suffi-

cient evidence supports Martinez's conspiracy and possession convictions (and thus supports a finding that Martinez did know—he and Gallo, at least—were going to steal cocaine), Gallo's argument fails. Gallo's conspiracy conviction is affirmed.

*Exclusion of Testimony*

At trial, Martinez sought to testify that Gallo told him they were going to the house to steal money. The district court sustained the government's hearsay objection.[3] Defendants claim the district court erred in excluding as hearsay Martinez's testimony of what Gallo told him about the burglary.

■ Martinez says the district court erred because the testimony was not being offered to prove the truth of the matter asserted, but to show Martinez's lack of intent and knowledge. *See United States v. Rubin,* 591 F.2d 278, 283 (5th Cir.1979).[4] Gallo says the main issue was the nature of the conspiracy and says the district court's ruling prevented the jury from learning what the conspirators dis-

---

**2.** By the way, Martinez's testimony presented the jury with some inconsistencies. For example, Martinez testified that he did not handle a tire iron during the break-in and that Gomez and Gallo entered the house before him. But, three law enforcement officers testified that all three Defendants approached and entered the house together and that Martinez carried what appeared to be a crowbar and did use it to pry open the front door. Martinez also testified that his financial situation was so bad in 1991 that he had to borrow water from his brother's house to fill his toilet tank, but he also testified that on the same day he borrowed the water, he and Gallo washed their cars at Martinez's house. Martinez tried to explain the inconsistency by saying that his neighbor allowed him to hook his hose up to the neighbor's house, but Martinez could not remember his neighbor's name.

**3.** Martinez objected to the district court's ruling on the ground that Gallo's statements fell within the coconspirator exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E). Gomez's counsel asked Martinez if Gallo told him when he would be paid the $10,000. Again, the district court sustained the government's hearsay objection; and Gomez's counsel objected to the court's ruling on the grounds that Gallo's statements were admissible under the "state of mind" exception to the hearsay rule under Federal Rule of Evidence 803(3). Later, after the defense rested and immediately before the charge conference, Gomez's counsel objected to the exclusion of Gallo's statements on the grounds that they were not hearsay because they

were not introduced to prove the truth of the matter asserted. Gomez's counsel said that this idea is what was meant by his "state of mind" objection. The district court ruled that "not being offered for truth" was not the same as "state of mind" and ruled that the not-being-offered-for-the-truth objection was untimely.

The government argues that the coconspirator exception to the hearsay rule does not apply to exculpatory statements to be introduced "against" the government made by a coconspirator. *See United States v. Kapp,* 781 F.2d 1008, 1014 (3rd Cir.1986). Martinez has abandoned the argument on appeal that his testimony should have been admitted as a coconspirator statement; so, we need not reach the merits of this claim.

**4.** The government misinterprets Martinez's asserted ground for the admission of Gallo's statements to be the state of mind exception to the hearsay rule under Federal Rule of Evidence 803(3). A close reading of Martinez's brief and of the cases cited within it, discloses that his real argument is that the testimony should have been admitted because it was not offered to prove the truth of the matter asserted and, thus, was not hearsay at all. Gallo's statements were not admissible under Rule 803(3) to show Martinez's state of mind. *See United States v. Gomez,* 927 F.2d 1530, 1535 (11th Cir.1991) (state of mind exception would make statement admissible only to show declarant's then existing state of mind, not defendant's).

cussed and agreed to do. *See United States v. Kelly*, 749 F.2d 1541, 1548–49 (11th Cir. 1985) (conspiracy conviction reversed where no evidence that importation scheme was discussed with defendant). Gallo also says that the district court's broad discretion in ruling upon the admissibility of evidence does not extend to the exclusion of relevant evidence necessary to establish a valid defense. *See generally United States v. Williams*, 954 F.2d 668, 671 (11th Cir.1992).

■■■■ Only plain-error review applies because Martinez interposed an unmeritorious objection to the district court's exclusion of the testimony while Gallo made no objection to the exclusion of the testimony. *See United States v. Walther*, 867 F.2d 1334, 1343 (11th Cir.1989).[5] By its terms, plain error is error which is so obvious and substantial that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it. *See United States v. Reyes–Vasquez*, 905 F.2d 1497, 1501 (11th Cir.1990). Martinez was allowed to testify that he believed he was going to the house to steal money and that he thought he would be given $10,000 of the stolen money. Prohibiting Martinez from testifying specifically that Gallo told him they were going to the house to steal money was not plain error: we cannot say the exclusion caused a miscarriage of justice. *See generally id.* at 1501 (plain error review to be invoked only in exceptional circumstances when needed to avoid miscarriage of justice).

*Jury Instructions*

Gallo argues the district court erred in refusing his requested theory of defense instruction and in giving an evidence of flight instruction. On the theory of defense, Gallo claims the pattern conspiracy instruction was inadequate because it did not address multiple conspiratorial objects or multiple conspiracies. Gallo says his theory of defense was highly unusual because he admitted the bulk of the criminal and conspiratorial conduct (conspiracy to break in and to steal), but offered an explanation why the seemingly "guilty" defendant was not guilty of the particular conspiracy charged: because the conspiracy involved an agreement to steal money, not cocaine, he was guilty of no conspiracy to possess cocaine. Gallo contends the district court's failure to give his proffered instruction impaired his defense that the object of the conspiracy was stealing money, not drugs.

■■■■ A defendant is entitled to have the court instruct the jury on the theory of the defense if it has some basis in the evidence and has some legal support. *See United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir.1987). But, the district court's refusal to give a requested instruction will be reversed only if the rejected instruction was substantively correct, the actual charge to the jury did not substantially cover the proposed instruction, and the failure to give the request substantially impaired the defendant's ability to present an effective defense. *Id.*

■■■■ In this case, the jury instruction on conspiracy was sufficient, especially in the light of the fact that the district court directly instructed the jury that the object of the conspiracy with which Defendants were charged was the violation of 21 U.S.C. § 841(a): a separate statute criminalizing the knowing possession of cocaine with intent to distribute it. The jury instruction repeatedly mentioned cocaine as the core of Defendants' criminal conduct as prosecuted by the government. Gallo's theory of defense instruction was adequately covered by the in-

---

5. Defendants argue that plain error review is not appropriate because Gomez objected to the district court's exclusion of Martinez's testimony on the grounds that it was not hearsay because it was not offered for the truth of the matter asserted, but for the "state of mind" of Martinez. The district court ruled that Gomez's objection was untimely. Gomez's assertion that the testimony was not hearsay came after the defense rested. We agree that the objection was not timely: plain error review applies. *See United States v. Soron-*

*do*, 845 F.2d 945, 948–949 (11th Cir.1988) (purpose of plain error rule is to enforce requirement that parties object to errors at trial in timely manner so that trial judge may correct errors); *United States v. Chaney*, 662 F.2d 1148, 1151 & n. 3 (5th Cir.Unit B 1981) (objection made some time after judge's objectionable conduct not timely); *See generally United States v. Madruga*, 810 F.2d 1010, 1014 (11th Cir.1987) (district court has no duty to interpret imaginatively what lawyers say).

structions given, and Gallo's defense was not impaired.

■ Gallo also claims the district court erred by giving an instruction on flight as evidence of guilt. Gallo claims that the flight instruction was improper because the government did not prove that Gallo knew he was being investigated for drugs, as opposed to burglary, at the time he ran out of the house. Gallo says he ran because he feared being charged with armed burglary, not the federal drug charges.

The government says the evidence shows Gallo, possessing a firearm, broke into the house to steal cocaine. That Gallo knew he had also committed a burglary does not detract from the evidence that Gallo was attempting to evade arrest for committing a drug offense and for being a felon in possession of a firearm. The district court did not err in giving the flight instruction: the crimes (that is, the crime for which Gallo says he ran and the crimes for which he is on trial) were sufficiently related. Gallo's flight could demonstrate consciousness of guilt for the crimes charged. *Cf. United States v. Myers*, 550 F.2d 1036, 1050 (5th Cir.1977) (alternatively holding flight instruction not proper where defendant committed another totally independent crime between time of alleged offense for which defendant is on trial and arrest immediately preceded by flight); *United States v. Blakly*, 960 F.2d 996, 1001 (11th Cir.1992) (evidence of flight properly admitted where defendant was aware of arrest warrant for unrelated crime).

*Sentencing*

■ Gallo claims the district court erred in calculating the amount of cocaine involved in the offense to be more than 15 but less than 50 kilograms. Gallo says the district court should have discounted the 45 kilograms of sham cocaine and based his sentence for his possession conviction on the 4.9 kilograms of real cocaine he possessed.[6] Gallo did not raise this issue below, despite having the opportunity to object after the district court pronounced his sentence; so he is barred from raising the issue on appeal absent manifest injustice. *See United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990), *cert. denied*, 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds*, *United States v. Morrill*, 984 F.2d 1136 (11th Cir.1993). Manifest injustice has been equated with plain error review. *See United States v. Newsome*, 998 F.2d 1571, 1579 (11th Cir.1993).

■ Gallo relies on *United States v. Taffe*, 36 F.3d 1047 (11th Cir.1994), to support his claim that his sentence for possession should have been based on the 4.9 kilograms of real cocaine.[7] Gallo's reliance on *Taffe* is misplaced because *Taffe* does not stand for the proposition that sentences for possession must be based on the amount of *real* cocaine possessed. Gallo cannot show plain error. The district court did not err in determining the quantity of cocaine to be used at sentencing.[8]

AFFIRMED IN PART, REVERSED and REMANDED IN PART.

---

**6.** In his reply brief, Gallo argues also that the sham cocaine should not be used for his conspiracy conviction. We decline to consider arguments raised for the first time in a reply brief. *See Jackson v. United States*, 976 F.2d 679, 681 n. 1 (11th Cir.1992).

**7.** In *Taffe*, the defendant attempted to steal 146 kilograms of cocaine (which had been put into bales) from a warehouse, but pulled only one cocaine bale through the window before he was arrested. *See Taffe*, 36 F.3d at 1049. The court held that the defendant's sentence for the possession count had to be based on the amount of cocaine in the one bale because he never possessed the other bales. *Id.* at 1050.

**8.** Gallo had argued that, because he was convicted under 18 U.S.C. § 924, the district court erred by enhancing his sentence by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) for a coconspirator's possession of a firearm during the offense. Gallo now recognizes that this argument is foreclosed. *See United States v. Rodriguez*, 65 F.3d 932, 933 (11th Cir.1995) (defendant's sentence may be enhanced under U.S.S.G. § 2D1.1(b)(1) for coconspirator's use of firearm even if defendant receives consecutive sentence under 18 U.S.C. § 924(c)).