BARKETT, Circuit Judge,
dissenting.
BARKETT, Circuit Judge.
This record is completely devoid of any evidence whatsoever pertaining to any appellants’ knowledge of the presence of any controlled substance on the Seaboard Florida. To support convictions on both the attempt and conspiracy counts, all of which relate to cocaine, the government must prove that appellants acted with the specific intent required to commit these inchoate crimes. Without any evidence of appellants’ knowledge of the presence of drugs, which the government conceded at oral argument, the government cannot prove specific intent. Affirmance of the convictions in this case contravenes existing law. Accordingly, I dissent.
For the attempt counts, the government must prove that the appellants acted with the “kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it.” United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir.2001); see also United States v. Martin, 747 F.2d 1404, 1410 (11th Cir.1984) (describing attempt as a specific intent crime); Quality Foods de Centro America, S.A v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 996 n. 7 (11th Cir. 1983) (“[S]pecific intent is required in attempt cases.”). Similarly, for the conspiracy counts, the government’s burden is not merely to prove beyond a reasonable doubt (1) an agreement between two or more people, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means, United States v. Toler, 144 F.3d 1423, 1426 (11th Cir.1998), but to prove an agreement to commit the specific crime that forms the object of the conspiracy, in this case conspiracy to import cocaine or conspiracy to possess with intent to distribute cocaine, United States v. Charles, 313 F.3d 1278, 1286 (11th Cir. 2002). See id. (“[W]e agree with the government that the evidence presented at trial was sufficient to convict [the appellant] of his involvement in a conspiracy.... However, ... the government presented no evidence that [he] knew the conspiracy involved the theft of narcotics, and no reasonable inference could support such a finding.... We therefore reverse [his] convictions, both of which are predicated upon his knowledge of a conspiracy *318 to possess cocaine.” (citation omitted)); see also United States v. Schwarz, 283 F.3d 76, 110 (2d Cir.2002) (reversing conspiracy conviction because government proved a conspiracy but failed to prove specific intent to commit the charged conspiracy).
Without knowledge of the presence of drugs, appellants cannot have the specific intent required for the conspiracy and attempt charges in this case. Indeed, we frequently reverse convictions for specific intent crimes relating to narcotics where the government fails to show defendants’ knowledge of the narcotics charged in the indictment. For example, in United States v. Martinez, 83 F.3d 371 (11th Cir.1996), we reversed a conviction for conspiracy to possess cocaine even though the government introduced evidence that defendant Gomez had been told by co-conspirator Gallo that they were going to steal money, that closed suitcases were stolen, and that Gallo had told another person that he had “men and guns ready” to steal cocaine. Id. at 374. We held that Gallo’s statement was “insufficient, alone, to prove that Gomez knew he was going to steal cocaine.” Id. In United States v. Perez-Tosta, 36 F.3d 1552 (11th Cir.1994), we similarly reversed a conspiracy conviction for insufficient evidence because the government did not establish beyond a reasonable doubt that Tosta knew about the drugs. While the government introduced evidence showing that Tosta was a “runner” for the keys and registration papers for a truck with concealed compartments containing narcotics, that he was sitting in a parked car where smugglers were preparing to offload the drugs, and that he was riding in a counter-surveillance vehicle near the site of a cocaine transfer, we noted that the evidence was insufficient to convict. Id. at 1559; see also United States v. Kelly, 749 F.2d 1541 (11th Cir.1985).
No one argues with the proposition that “[t]he government is not required to rely on direct evidence to show knowledge,” Majority Op. at 6. The troubling point is that there is nothing in this record from which it can even be inferred that these appellants “engaged in acts that ‘strongly suggest their knowledge and that they acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it.’ ” Majority Op. at 7 (quoting McDowell, 250 F.3d at 1366). Indeed, the majority’s reliance on McDowell is inapposite.
In McDowell, the two defendants were linked in numerous ways to the drugs they were charged with attempting to possess, and this court placed great importance on defendants’ acts of concealment. First, the defendants intentionally used a number of false documents to gain access to the area where the cocaine was located, 250 F.3d at 1358-59, unlike this case where the appellants were lawfully present in the port. Second, in McDowell both of the defendants were carrying business cards with the number of the container full of cocaine written on them. Id. at 1360-61. Third, in McDowell the district court admitted evidence of a prior incident in which a truck from the same company used by the two defendants had entered the same premises using false documentation a few weeks earlier, as indicative of the modus operandi of defendants’ conspiracy to import cocaine, namely the so-called “rip method,” whereby “duffel bags of cocaine are placed inside a container with an otherwise legitimate shipment.” Id. at 1364. Finally, the defendants in McDowell repeatedly lied to law enforcement officers following their arrests. Id. at 1360-62. In finding that there was sufficient evidence to support an attempt conviction, this court placed significant emphasis on defendant’s “acts and statements of falsity and concealment which strongly *319 suggest their knowledge and that they acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it.” Id. at 1866. Indeed, these acts of concealment seem to have been determinative in this court’s analysis in McDowell. Id. at 1367 (“Quite simply, a jury was free to infer from appellants’ false statements and acts of concealment, evidence of their guilty knowledge, culpability, and intent to import cocaine and attempt to possess with intent to distribute cocaine.”). Moreover, there was evidence in McDowell regarding the usual packaging of cocaine. Id. at 1364
In contrast, the government here conceded that it presented no evidence at trial regarding appellants’ knowledge of the presence of cocaine. As the majority notes, “[inexplicably absent from the government’s presentation is expert testimony by an experienced narcotics agent about the significance of certain conduct or methods of operation unique to the drug distribution business.” Majority Op. at -. Instead, the majority evinces appellants’ knowledge of the presence of drugs from actions and statements on the day of the incident which were not acts of concealment or otherwise incriminatory, but rather neutral in character—such as the fact that Geer asked the first mate why the boat was late, and the fact that Godinez, Gallimore, and Walden walked towards the area of the ship where the bags were located. Majority Op. at---. None of these actions, even when taken together, relate to cocaine or any other controlled substance.
Although based on this record appellants could have been thought to be retrieving contraband from the junk pile area, no evidence permitted the jury to find, beyond a reasonable doubt, that it was narcotics that the appellants knew they were retrieving from the junk pile. Often, contraband other than narcotics is imported. See, e.g., United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (forfeiture of obscene photographs as contraband at airport); Compania Naviera Vascongada v. United States, 354 F.2d 935 (5th Cir.1966) (affirming forfeiture of undeclared duty free goods seized in the port of Mobile, Alabama). Appellants’ actions may well have indicated them participation in a criminal venture, but in order to convict on either an attempt or conspiracy charge the government needs to prove the defendants acted with the specific intent to commit the charged crime, and this they have failed to do. See Charles, 313 F.3d at 1286. I would therefore reverse the convictions.