[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 24, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16226
Non-Argument Calendar

_____

D. C. Docket No. 06-00094-CR-1-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERTO LOYA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(July 24, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Alberto Loya appeals his conviction for conspiracy to possess with intent to

distribute marijuana, in violation of 21 U.S.C. § 846. For the reasons that follow, we affirm.

## I. Background

A grand jury indicted Loya with conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count 1) and possession with intent to distribute approximately 134 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 2). The evidence adduced at trial established the following:

On October 26, 2005, at approximately 1:00 PM, Alabama State Trooper Shone Minor was monitoring traffic on Interstate 65 in Mobile, Alabama when he observed three vehicles traveling close together in the northbound lanes, including a white Nissan truck followed by a black Lincoln Navigator. Trooper Minor noticed the Nissan tailgating the lead vehicle, and he attempted to pull the Nissan over. But every time Minor attempted to move his patrol car behind the Nissan, the Navigator would move closer to the Nissan, effectively blocking Minor's vehicle. Even after Minor activated the lights and siren of his patrol car, the driver of the Navigator, whom Minor subsequently identified as defendant Loya, refused to yield or move out of the way.

After approximately three quarters of a mile, Trooper Minor was eventually

able to move behind the Nissan. At this point, the Nissan traveled off of the interstate and into a wooded area. The driver and passenger got out of the Nissan and fled on foot. Trooper Minor stayed with the Nissan and issued a "BOLO" ("be on the lookout") for a black Navigator with a Georgia license plate being driven by a Hispanic male wearing a red cap. Minor then exited his patrol car and approached the Nissan. As he approached, he smelled the odor of marijuana and observed what appeared to be bundles of marijuana wrapped in cellophane underneath a blanket behind the passenger's seat. Laboratory tests subsequently confirmed that the Nissan contained fifteen bundles of approximately 300 pounds of marijuana.

Sergeant Tim Pullin and Trooper Jesse Peoples arrived at the scene and began searching the area for the two persons who had fled the Nissan. During an inventory search of the Nissan, troopers found, among other items, a Western Union receipt and a pay stub, both in Loya's name, as well as a vehicle registration in the name of Ignacio Loya. Approximately one hour later, Troopers James Odom and Christopher Faulk spotted a black SUV and a driver matching the descriptions in Trooper Minor's BOLO. Both troopers pursued the Navigator and pulled it over. Loya, who had been driving, and three other males were inside of the vehicle. An agent from the Bureau of Immigration and Customs Enforcement

interviewed the four men and determined that there were no outstanding warrants and no records as to their immigration status. The men in the Navigator were identified as defendant Alberto Loya, Lorenzo Loya, Ramon Loya, and Huriel Naranjo Loya. Loya was detained and the other men were eventually released.

Minor and Peoples drove approximately 85 to 90 miles north of where the Nissan had crashed and arrived on the scene where the Navigator had been stopped. Minor identified Loya as the individual whom he had earlier observed driving the Navigator. During an inventory search of the Navigator, troopers found, among other items, a receipt from a U-Haul store in Georgia for two 20 x 100 inch packages of shrink wrap (wrap similar to that found on the bundled marijuana), as well as an IRS taxpayer identification card, a birth certificate, and a vehicle registration, all in Loya's name.

After the Government rested its case-in-chief, Loya moved for judgment of acquittal, which the court denied. Loya then testified in his own defense. He claimed that on the day in question, he had been driving to Atlanta from Texas so that he could return to his home in California. He denied trying to block Trooper Minor from stopping the Nissan, claimed that he had never seen the marijuana before it was introduced into evidence in the courtroom, disavowed any knowledge of the receipt for the shrink wrap purchased at a U-Haul store, and said that he did

4

not know the other passengers in the Navigator. Loya also claimed that he did not know how the Western Union receipt issued in his name had gotten into the Nissan, and he contended that the pay stub had not been found in the Nissan but was taken from him once he had been jailed. After his testimony, Loya rested his case.

The jury found Loya guilty of conspiracy to possess with intent to distribute marijuana (Count 1), but acquitted him of possession with intent to distribute marijuana (Count 2). Loya moved to set aside the guilty verdict and for judgment of acquittal, both of which the court denied. Loya was sentenced to 70 months' imprisonment. He now appeals.

## II. Discussion

On appeal, Loya argues that the district court erred in denying his motion for judgment of acquittal because the guilty verdict on Count 1 was inconsistent with his acquittal on Count 2, and in any event, the evidence was insufficient to sustain his conviction on Count 1.

We review the denial of a judgment of acquittal and the sufficiency of the evidence de novo, viewing "the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Martinez, 83 F.3d 371, 374 (11th Cir.

1996).  "We will uphold a district court's denial of a motion for a judgment of acquittal unless there is no reasonable construction of the evidence under which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  United States v. Orisnord, 483 F.3d 1169, 1177 (11th Cir. 2007).

To support a conviction for conspiracy under 21 U.S.C. § 846 (Count 1), the government must prove that: "(1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it."  United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).

The existence of an illegal agreement may be established by evidence of the attendant circumstances, the concerted acts and conduct of the alleged conspirators, and the inferences reasonably deductible therefrom.  United States v. Clark, 732 F.2d 1536, 1539 (11th Cir. 1984) (citation omitted).  The defendant's knowledge of the conspiratorial goal may be established "when the circumstances surrounding [the defendant's] presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him."  United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006).  And knowing and voluntary participation in an illegal conspiracy may be established by proof of "acts committed by the defendant which furthered the purpose of the conspiracy."  United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir. 1990).  And although

6

mere presence at the crime scene is not enough to establish knowing and voluntary participation, mere presence "is material, highly probative, and not to be discounted." United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999) (citation omitted).

To support a conviction for possession with intent to distribute in violation of 21 U.S.C. § 841(a) (Count 2), "the government must prove (1) knowing (2) possession of a controlled substance (3) with intent to distribute it. Possession may be actual or constructive and may be proved by circumstantial evidence." United States v. Farris, 77 F.3d 391 (11th Cir. 1996) (citation omitted).

*A. Whether the Inconsistent Verdicts Shows that the Evidence Was Insufficient*

Loya contends that based on the elements of each crime charged in the indictment, his acquittal on Count 2 "necessarily" means that the jury "considered every element of the conspiracy charge [(Count 1)] in the negative." He argues that there was "an identical overlay in the very limited evidence that was presented" regarding both counts, and therefore, the jury's "rejection of the sufficiency of the government's case regarding Count [2]" shows that the evidence was insufficient to support his conviction on Count 1.

Loya's argument that his acquittal on Count 2 establishes insufficiency of the evidence to support his conviction on Count 1 "improperly conflates the

7

distinction between insufficiency of the evidence and inconsistent verdicts." See

United States v. Veal, 153 F.3d 1233, 1252 (11th Cir. 1998). "Consistency in the

verdict is not necessary." Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189,

76 L.Ed. 356 (1932). Because "each count in an indictment is regarded as a

separate indictment, merely the jury's choice to acquit on one charge does not have

a res judicata effect on any other separate count." United States v. Odom, 252 F.3d

1289, 1298 (11th Cir. 2001) (affirming defendants' convictions for conspiracy to

commit arson where defendants had been acquitted of the substantive offense of

arson). Thus, "'[s]ufficiency-of-the evidence review involves assessment by the

courts of whether the evidence adduced at trial could support any rational

determination of guilt beyond a reasonable doubt,' a review that is 'independent of

the jury's determination that evidence on another count was insufficient.'" Veal,

153 F.3d at 1252-53 (quoting United States v. Powell, 469 U.S. 57, 67, 105 S.Ct.

471, 83 L.Ed.2d 461 (1984)). This rule "even applies to verdicts, such as the one

here, that acquit on a predicate offense while convicting on the compound

offense." Odom, 252 F.3d at 1298 (citing Powell, 469 U.S. at 64, 105 S.Ct. 471).

"The most that can be said [of an inconsistent verdict] is that the verdict shows that

either in the acquittal or the convictions the jury did not speak their real

conclusions, but that does not show that they were not convinced of the

8

defendant's guilt." Dunn, 284 U.S. at 393, 52 S.Ct. 189. As such, Loya's acquittal on Count 2 "is irrelevant to our singular focus on and determination of whether the evidence adduced at trial supports" his conviction on Count 1. Veal, 153 F.3d at 1253.

## B. Sufficiency of the Evidence

Loya contends that regardless of the inconsistent verdicts, the evidence was nonetheless insufficient to sustain his conviction for conspiracy. Based on a careful review of the record and the parties' arguments, however, we conclude that the evidence was sufficient to support Loya's conviction. Viewing the evidence in the light most favorable to the Government, and making all reasonable inferences and credibility choices in the Government's favor, see Martinez, 83 F.3d at 374, the evidence adduced at trial established that (1) an illegal agreement existed between Loya and the occupants of the Navigator and Nissan to possess with intent to distribute the more than 100 pounds of marijuana found in the Nissan; (2) Loya knew of that agreement; and (3) with knowledge of that agreement, Loya voluntarily engaged in acts in furtherance of that agreement. See McDowell, 250 F.3d at 1365. We thus conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Loya engaged in a conspiracy to possess with intent to distribute marijuana as charged in Count 1. See Orisnord, 483 F.3d at

9

1177.  Moreover, because Loya decided to testify, he risked that the jury would determine that he lacked credibility and believe the Government's case.  See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) ("[T]he jury, hearing [the defendant's] words and seeing his demeanor, was entitled to disbelieve [his] testimony and, in fact, to believe the opposite of what [he] said.").

## III.  Conclusion

For the foregoing reasons, we **AFFIRM**.