[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10302
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cr-00234-MSS-SPF-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERICK RICHARD ROBINSON,
a.k.a. Big E,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 1, 2021)

Before MARTIN, BRANCH, and ED CARNES, Circuit Judges.

PER CURIAM:

Erick Robinson appeals his sentence of 100 months imprisonment.

## I.

Robinson was a member of a criminal motorcycle club. His gang conspired to murder, and did murder, a rival gang's member. Robinson was arrested for his role in the murder and was indicted for being an accessory after the fact in a conspiracy to commit murder and murder in aid of racketeering activities, in violation of 18 U.S.C. § 3, and for conspiracy to distribute heroin, cocaine, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(C), (D), and 846.

Robinson pleaded guilty to both counts. In the plea agreement, the government agreed not to oppose Robinson's request for a two-level "acceptance of responsibility" reduction to his offense level, but only if it did not receive any "adverse information . . . suggesting such a recommendation to be unwarranted." Similarly, the government agreed to move for an additional one-level decrease under U.S.S.G. § 3E1.1(b), but only if Robinson complied with the terms of that provision as well as "all terms of th[e] Plea Agreement." The agreement went on to specify that "the determination as to whether [Robinson] has qualified for" the one-level decrease "rests solely with the" government, and that Robinson "cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise." In addition, Robinson agreed to cooperate with the government, and

2

the government agreed "to consider" moving for a downward departure under U.S.S.G. § 5K1.1 if it thought his cooperation justified it. Robinson agreed that he understood the determination of whether to make that motion "rest[ed] solely with the" government and that he would "not challenge that determination, whether by appeal, collateral attack, or otherwise."

The plea agreement also contained a waiver of Robinson's right to appeal his sentence. The waiver stated that Robinson "expressly waives the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range." The agreement provided four exceptions to the waiver, allowing Robinson to appeal his sentence if it exceeded his guidelines range, exceeded the statutory maximum, violated the Eighth Amendment, or the government appealed the sentence.

For the factual basis supporting the plea, Robinson "certifie[d] that [he] does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt." The facts that Robinson admitted were "true" included the way in which he had been an accessory after the fact to the murder. He had been by agreeing "to dispose of the firearm used to murder" the victim, by "alter[ing] the appearance of the motorcycles" used during the murder, and by lying to law enforcement agents about where he was at the time of the murder. The agreement

3

also stated that he had arranged for the transportation of heroin into Florida, that he had been involved in the heroin's redistribution, and that he was responsible for the sale of cocaine and marijuana.

At the plea colloquy, the court explained the plea agreement and the rights Robinson was giving up, all of which Robinson confirmed he understood.  As for the factual basis, Robinson objected to only one part of it, and he specified that it was "the only objection that [he] would have to the factual basis."  His objection was that he had not arranged the transportation of heroin but had only been involved in its redistribution.  Based on that, the agreement was amended in court to remove the reference to Robinson arranging the transportation, which left in the plea agreement his involvement in the redistribution of the heroin along with all the other facts.  With that change Robinson testified that "all the facts as set forth in this plea agreement [are] true."

As for the waiver of his right to appeal his sentence, the court expressly asked him about it.  The court explained to Robinson that he was waiving the "right to appeal [his] sentence on any ground, including that the District Judge made a mistake in calculating [his] Sentencing Guidelines range."  The court also explained each of the exceptions to the waiver.  It asked Robinson if he understood "what you're giving up here" and if he was "making this waiver freely and voluntarily."  Robinson answered both questions "yes."

When it came time for sentencing, Robinson changed his tune. No longer did he admit to having helped dispose of the firearm and alter the motorcycles' appearances. He now asserted that he did neither of those things. Even though he had signed a plea agreement that said the facts were both true and provable beyond a reasonable doubt, and even though he had testified at the plea colloquy that the facts in the agreement were "true," he now said that what he really meant was the facts were not true but merely that a jury could believe them.

At the sentence hearing, the court rejected Robinson's argument, finding that he did agree to dispose the firearm and alter the motorcycles. It also found him accountable for certain quantities of heroin, cocaine, and marijuana, all of which were quantities Robinson had contested. As for the government's agreement to help Robinson get certain sentence reductions, it did not do so. Instead, it opposed Robinson's request for a two-level reduction for acceptance of responsibility and it did not move for an additional one-level reduction or for a substantial assistance departure. Nonetheless, the district court granted Robinson's request for the two-level reduction.

The result was that Robinson had a guidelines range of 168 to 210 months imprisonment, based on an offense level of 30 and a criminal history of VI. The court sentenced him to 100 months imprisonment.

## II.

Robinson contends that the government breached the plea agreement. He argues that the breach came when the government opposed his request for a two-level decrease for acceptance of responsibility, refused to move for an additional one-level decrease for acceptance of responsibility, and refused to move for a substantial assistance departure.

We review de novo whether the government has breached a plea agreement, United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004), but when there was no objection we review only for plain error, Puckett v. United States, 556 U.S. 129, 133–34 (2009). Robinson does not appear to have objected, but regardless of whether he preserved the issue, his claim fails under any standard of review because the government did not breach the plea agreement.

Robinson complains that he is not getting what he bargained for because he expected the government's help in getting certain offense level reductions. But Robinson did not hold up his end of the bargain, so his complaints can't be heard. The government's help was predicated on him accepting responsibility. Yet he did not do that. Instead, he launched an eleventh-hour challenge to the very facts that he had already agreed were "true" — expressly in both writing and sworn testimony — when he pleaded guilty. That suggested Robinson was being dishonest one way or the other, and it indicated his failure to accept responsibility.

6

See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (explaining the strong presumption that statements at a plea colloquy are true); United States v. Taffe, 36 F.3d 1047, 1049 (11th Cir. 1994) (explaining that a guilty plea was "a legally binding admission" and that the defendant "cannot now challenge as improper a sentence that directly reflects the facts to which he pleaded guilty"); U.S.S.G. § 3E1.1 cmt. n.1(A) ("A defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). In light of that, the government did not breach the plea agreement in concluding that it had received "adverse information . . . suggesting such a recommendation [for an offense level decrease] to be unwarranted."

Additionally, Robinson has no basis to challenge the government's decision not to move for him to get a downward departure based on substantial assistance. Whether to do so was within the government's sole discretion, and the government agreed only to "consider" it. There is no evidence that the government refused to "consider" it. See United States v. Forney, 9 F.3d 1492, 1499 n.2 (11th Cir. 1991).

### III.

Robinson also challenges the district court's findings about the drug quantities attributable to him, but that challenge falls within his appeal waiver. If the waiver is valid, we cannot consider the challenge.

We review <u>de novo</u> the validity of a sentence appeal waiver. <u>United States v. Johnson</u>, 541 F.3d 1064, 1066 (11th Cir. 2008). A sentence appeal waiver is valid if it was made knowingly and voluntarily, which is established if "the district court specifically questioned the defendant about the waiver." <u>Id.</u> The district court did question Robinson specifically about the appeal waiver, and it explained to him each of the four narrow exceptions it. The waiver is enforceable, which means Robinson's challenge fails unless it fits one of the exceptions. It does not. His challenge to the drug quantities does not contend that his sentence exceeds the guidelines range the court determined, or that it exceeds the statutory maximum, or that it violates the Eighth Amendment. And the government has not appealed the sentence.

**AFFIRMED.**